FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

20 MAR 31 AM 11: 35

CLERK _____
SO. DIST. OF GA.

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

RONALD COX,                     *
                                *
        Plaintiff,              *
                                *
        v.                      *          CV 119-031
                                *
DEPUTY WARDEN BENJIE NOBLES,    *
OFFICER CRUMP, WARDEN PERRY,    *
SARGENT DAVIS, WARDEN TED       *
PHILBIN, and UNIT MANAGER       *
HARRIS,                         *
                                *
        Defendants.             *

---

## O R D E R

---

Before the Court is Defendants Nobles, Perry, Davis, Philbin, and Harris's ("Moving Defendants") motion to dismiss amended complaint. (Doc. 17.) After due consideration and for the following reasons, the motion to dismiss is **GRANTED**. Before addressing the pending motion, the Court addresses Plaintiff's failure to serve Officer Crump.

## I. FAILURE TO SERVE OFFICER CRUMP

The record lacks evidence showing service upon Officer Crump. Moving Defendants note this service failure in their motion to dismiss amended complaint (Br. Supp. Moving Defs.' Mot. to Dismiss, Doc. 17-1, at 2 n.2), yet Plaintiff fails to address or acknowledge this deficiency in his response. In fact, Defendants alerted Plaintiff of this deficiency on May 28, 2019, when they moved to

dismiss the original complaint. (Mot. to Dismiss Compl., Doc. 3; Br. Supp. Mot. to Dismiss Compl., Doc. 3-1, at 2 n.2.)  In the August 21, 2019 Joint Rule 26(f) Report, the Parties stated, "All Defendants have been served except for Defendant Crump." (Doc. 18, at 1.)  Although the prompt requested the Parties to provide an expected date of service, no date was provided. (Id.)

> Under Federal Rule of Civil Procedure 4(m):
>
> If a defendant is not served within [ninety] days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

"Even in the absence of good cause, a district court has the discretion to extend the time for service of process." Lepone-Dempsey v. Carroll Cty. Comm'rs, 476 F.3d 1277, 1281 (11th Cir. 2007), superseded in part by statute as stated in Horenkamp v. Van Winkle & Co., 402 F.3d 1129, 1132-33 (11th Cir. 2005).  After a finding of no good cause:

> [T]he district court must still consider whether any other circumstances warrant an extension of time based on the facts of the case.  Only after considering whether any such factors exist may the district court exercise its discretion and either dismiss the case without prejudice or direct that service be effected within a specified time.

Id. at 1282.  The advisory committee's note to Rule 4 explains that this "[r]elief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or

if the defendant is evading service or conceals a defect in attempted service." FED. R. CIV. P. 4(m) advisory committee's note to 1993 amendments; see also Horenkamp, 402 F.3d at 1132-33 (upholding district court's extension of time to serve even without good cause for the delay because statute of limitations had run). However, "the running of the statute of limitations does not require that a district court extend the time for service of process." Horenkamp, 402 F.3d at 1133.

The Court finds Plaintiff received ample notice of the lack of service and failed to rectify the situation; Plaintiff now fails to offer any good cause for the extensive delay. The Court also finds there is no other reason warranting it to exercise its discretion and extend the time to serve. "Section 1983 claims are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." DeYoung v. Owens, 646 F.3d 1319, 1324 (11th Cir. 2011) (citation and internal quotations omitted). In Georgia, there is "a two-year statute of limitations for personal injury actions" id. (citing O.C.G.A. § 9-3-33), "and that limitations period is two years from the accrual of the right of action" Thompson v. Corr. Corp. of Am., 485 F. App'x 345, 347 (11th Cir. 2012) (applying Georgia law).

Plaintiff brings his deliberate indifference claim against Officer Crump for acts occurring while at Autry State Prison, which lasted from April 2017 to, at the latest, August 2017. (See Am.

3

Compl., Doc. 16, ¶¶ 11-12, 15.)  Thus, it is probable the statute of limitations has now expired on Plaintiff's claims against Officer Crump.  See Thompson, 485 F. App'x at 347 (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)) (finding deliberate indifference claim accrued on the date "he was assaulted by the other inmate" because, at that time, he "had a 'complete and present cause of action.'").  Regardless, because Plaintiff obtained notice of the lack of service almost a year ago — potentially before the statute of limitations expired — yet declined to effect service, request an extension, or take any action to rectify the known deficiency, the Court is disinclined to exercise its discretion to grant an extension.  As such, Plaintiff failed to effect service on Officer Crump and the Court lacks jurisdiction over him.

## II.  BACKGROUND

Plaintiff, Ronald Cox,[1] brings this action for assaults he experienced from April 2017 to May 2018 while an inmate at three different prisons: Autry State Prison, Central State Prison, and Augusta State Medical Prison.  (Am. Compl., ¶¶ 11, 15, 21.)  At each prison, Plaintiff received "transgender injections of estrogen which caused him to exhibit female breasts and hips . . . as well as other female features."  (Id. ¶ 10 (punctuation omitted).)  Upon entering each prison, Plaintiff

---

[1] The Court uses masculine pronouns when referring to Plaintiff consistent with the pronouns used by Plaintiff in his filings.  (See, e.g., Pl.'s Resp. Opp'n Moving Defs.' Mot. to Dismiss, Doc. 22, at 2.)

requested protection in accordance with the Prison Rape Elimination Act[2] ("PREA").[3] (Id.)

## A. Autry State Prison

"On April 27, 2017[,] at Autry State Prison[,] Plaintiff filed a [PREA] complaint which was reviewed by [Defendant] Deputy Warden Benjie Nobles who had Plaintiff moved into a cell with Rashad Stanford who sexually assaulted and threatened him with a weapon." (Id. ¶ 11.) It is unclear what happened thereafter. Plaintiff states that he "reported the sexual assault to Officer Crump"[4] and told Officer Crump that "Stanford had a shank," but no action was taken. (Id. ¶ 12.) Plaintiff also "immediately filed a PREA with Unit Manager Hodge," and "[a]n investigation by PREA was done by [Defendant] Nobles who . . . made no action to remove Plaintiff Cox into a PREA dorm." (Id. ¶ 13.) In the next paragraph, however, Plaintiff states that he "was sent to the hospital for medical attention following the assault. (Id. ¶ 14.) Upon returning to the prison, Plaintiff Cox was transferred out of the cell with Rashad and placed on lockdown for [thirty] days until he was transferred to Central State Prison." (Id.) Plaintiff's Amended

---

[2] In general, PREA's purpose is for the development of national standards to reduce "prison rape." 34 U.S.C. § 30302.
[3] Plaintiff sometimes states that he "filed a [PREA] complaint" and other times only states that he "filed a PREA." (Compare Am. Compl. ¶ 11, with id. ¶ 19.) A PREA or PREA complaint seems to be a request for additional protection. (See Am. Compl., ¶ 10.) Plaintiff does not explain the substance of these requests.
[4] Officer Crump is not a defendant in this action. See supra Section I.

5

Complaint contains no allegations he was attacked at Autry State Prison after the April 27, 2017 assault.

## B. Central State Prison

Upon his transfer to Central State Prison, Plaintiff "was not placed in a safe environment provided by PREA . . . of which he requested PREA protection from [Defendant] Warden Perry and filed grievances about not being protected in accordance with PREA." (Id. ¶ 15.) While watching the television on August 9, 2018, Plaintiff "was attacked from behind by Benjamin Israel . . . and hit so hard that he fell to the ground. His attacker proceeded to kick him in the abdomen and punch him continuously." (Id. (internal punctuation omitted).) Plaintiff also states, "No officer broke up the fight. The prison was short staffed and there was one officer watching four pods." (Id.)

## C. Augusta State Medical Prison

Plaintiff was then transferred to Augusta State Medical Prison where, again, "he was not placed in a safe environment provided by PREA . . . of which he requested PREA protection from [Defendant] Warden Philbin and filed grievances about not being protected in accordance with PREA." (Id. ¶ 16.) On April 13, 2018, there was an altercation between Plaintiff and his cell mate, Terry Frasier, which "began when Frasier saw [Plaintiff] come in the shower where Frasier was masturbating in which Frasier though[t] Plaintiff Cox was watching. Frasier then threatened to

6

'wet' Plaintiff Cox." (Id. ¶ 17.) Later that day, "Frasier pulled out a shank on Plaintiff Cox to which Cox fought back with a lock in a sock." (Id.) "Plaintiff filed a PREA regarding the fight with Terry Frasier. The PREA was filed with Counselor Taylor who reported it to [Defendant] [Sergeant] Harris. It was [thirty] days (May 17, 2018) before an investigation took place." (Id. ¶ 19.) No additional incident occurred during that time. Then, on May 21, 2018, Plaintiff asked Defendant Harris "why Frasier had not been moved from the cell to which [Defendant] Harris replied that Plaintiff Cox should be moved." (Id. ¶ 20.) Plaintiff was then removed from the cell with Frasier, but he remained in the same dorm as Frasier. (Id.) Later in the day after Plaintiff moved out of the cell with Frasier, Plaintiff "was critically stabbed by Terry Frasier and hospitalized for six days for his injuries." (Id. ¶ 21.) The Amended Complaint does not state where this attack occurred. "Upon being released from the hospital[,] Plaintiff was placed on lockdown in a PREA dorm." (Id.)

Plaintiff filed this case on March 4, 2019. (Compl., Doc. 1.) Plaintiff filed the Amended Complaint on August 8, 2019 (Am. Compl.), and Moving Defendants filed their motion to dismiss on August 12, 2019. (Moving Defs.' Mot. to Dismiss, Doc. 17.) Plaintiff responded (Pl.'s Resp. Opp'n Moving Defs.' Mot. to Dismiss, Doc. 22), and Moving Defendants replied (Moving Defs.' Reply Supp. Mot. to Dismiss, Doc. 25). As such, Moving Defendants'

motion to dismiss is ripe for the Court's consideration. For the following reasons, the court **GRANTS** the motion.

### III. MOTION TO DISMISS STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant has "fair notice" of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). Furthermore, a plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true,[5] to 'state a claim to relief that is plausible on its face.'"[6] Iqbal,

---

[5] The court must accept all well-pleaded facts in the complaint as true and construe all reasonable inferences therefrom "in the light most favorable to the plaintiff." Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006) (citation omitted). Conclusory allegations, however, "are not entitled to an assumption of truth — legal conclusions must be supported by factual allegations." Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010).

[6] Although the Eleventh Circuit previously employed a "heightened pleading standard" for "section 1983 cases where qualified immunity [was] at issue," Harper v. Lawrence Cty., 592 F.3d 1227, 1233 (11th Cir. 2010), such cases are now "held to comply with the standards described in Iqbal." Randall, 610 F.3d

556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has
facial plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Id. The court
may not reasonably infer the defendant is liable when the well-
pleaded facts fail to show "more than the mere possibility of
misconduct." Id. at 679; see Butler v. Sheriff of Palm Beach Cty.,
685 F.3d 1261, 1265 (11th Cir. 2012) ("[F]actual allegations must
be enough to raise a right to relief above the speculative level.")
(quoting Twombly, 550 U.S. at 555).

Moving Defendants argue Plaintiff's Amended Complaint fails
to state a plausible claim that Moving Defendants violated
Plaintiff's Eighth Amendment right and, thus, Moving Defendants
are entitled to qualified immunity. The Court now addresses Moving
Defendants' challenges.


## III. DISCUSSION

### A. Qualified Immunity

Qualified immunity is a judicially created affirmative
defense under which "government officials performing discretionary
functions generally are shielded from liability for civil damages
insofar as their conduct does not violate clearly established

---

at 709; see also Bowen v. Warden, Baldwin State Prison, 826 F.3d 1312, 1319
(11th Cir. 2016).

statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For qualified immunity[7] to apply, a public official first has to show he was "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003) (citations omitted). To determine whether a government official was acting within the scope of his discretionary authority, courts consider whether the official "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize."[8] Holloman, 370 F.3d at 1265. Once a defendant establishes that he was "acting within his discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Lumley, 327 F.3d at 1194; see Bowen, 826 F.3d at 1319 (applying same burden-shifting analysis in reviewing Rule 12(b)(6) dismissal).

---

[7] Prison officials may invoke the Eleventh Amendment when sued in their official capacity under § 1983 by inmates. See Williams v. Bennett, 689 F.2d 1370, 1376-77 (11th Cir. 1982), cert. denied, 464 U.S. 932 (1983).

[8] In other areas, "a 'discretionary function' is defined as an activity requiring the exercise of independent judgment, and is the opposite of a 'ministerial task.' . . . In the qualified immunity context, however, [the Eleventh Circuit] appear[s] to have abandoned this 'discretionary function/ministerial task' dichotomy." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004) (internal citation omitted). For purposes of qualified immunity, the Eleventh Circuit interprets "'discretionary authority' to include actions that do not necessarily involve an element of choice." McCoy v. Webster, 47 F.3d 404, 407 (11th Cir. 1995). A governmental actor engaged in purely ministerial activities can nevertheless be performing a discretionary function. Id.

Plaintiff fails to respond to Moving Defendants' conclusion that Moving Defendants were acting within their discretionary authority. At any rate, the Court finds Moving Defendants were engaged in a job-related function when generally working as officers and wardens at the prison. Given the low standard required to establish discretionary authority and the lack of opposition, the Court finds Moving Defendants acted in their discretionary authority.

Accordingly, the Court must look to the Amended Complaint to see if Plaintiff included sufficient facts demonstrating that Moving Defendants are not entitled to qualified immunity.[9] Bowen, 826 F.3d at 1319. In doing so, the Court must consider "whether, taken in the light most favorable to [Plaintiff], the facts alleged show [Moving Defendants'] conduct violated a constitutional right." Id. (citation omitted). If that is shown, Moving Defendants maintain their shield of immunity unless the constitutional right violated "was clearly established." Id. Because the Court finds Plaintiff's Amended Complaint does not

---

[9] The Court notes that at the motion to dismiss stage, Plaintiff does not have the burden to prove the facts alleged are true; the Court accepts facts in the Amended Complaint as true. See Randall, 610 F.3d at 705. Plaintiff, however, must allege enough facts in the Amended Complaint to allow the Court to find that qualified immunity does not protect Moving Defendants from this suit. Bowen, 826 F.3d at 1319 ("[T]he Twombly-Iqbal plausibility standard applies equally to pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense.") (internal quotation marks and citation omitted); Randall, 610 F.3d at 707 n.2 ("[C]omplaints in § 1983 cases must now contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.") (citation and internal quotation marks).

plausibly show Moving Defendants violated Plaintiff's constitutional right, the Court declines to address whether that right was clearly established.

## B. Constitutional Right

The Eighth Amendment[10] not only prohibits prison officials from inflicting "cruel and unusual punishment" upon inmates, but also imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citation omitted). To guarantee inmate safety, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Id. at 833 (citation omitted); see also Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986). Although officers can be liable for failing to prevent a prisoner-on-prisoner attack, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting Farmer, 511 U.S. at 834); see also Purcell ex rel. Estate of Morgan v. Toombs Cty., 400 F.3d 1313, 1321 (11th Cir. 2005) ("[A] prison custodian is not the guarantor of a prisoner's safety.") (citation and internal quotation marks).

---

[10] "The Eighth Amendment's ban on cruel and unusual punishment is made applicable to the states by virtue of the Fourteenth Amendment." Carter v. Galloway, 352 F.3d 1346, 1347 n.1 (11th Cir. 2003) (citing Robinson v. California, 370 U.S. 660, 666–67 (1962)).

> The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage . . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-38 (internal citation omitted). Thus, "[o]nly a prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." Culliver, 746 F.3d at 1298 (citation omitted). Consequently, an Eighth Amendment failure to protect claim requires a plaintiff to show that: "(1) a substantial risk of serious harm existed; (2) the defendants were deliberately indifferent to that risk, i.e., they both subjectively knew of the risk and also disregarded it by failing to respond in an objectively reasonable manner; and (3) there was a causal connection." Bowen, 826 F.3d at 1320. Moving Defendants challenge only the second prong, arguing Plaintiff's complaint does not plausibly show any moving defendant was deliberately indifferent. As such, the Court assumes prongs one and three are met for the purpose of the motion to dismiss and evaluates only Moving Defendants' challenge to prong two.

The second prong — the defendant's deliberate indifference to the risk — has both a subjective and an objective component, in that it requires the plaintiff to produce evidence that the

13

defendant: (1) "actually (subjectively) knew that an inmate faced a substantial risk of serious harm"; and (2) "disregarded that known risk by failing to respond to it in an (objectively) reasonable manner." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (citation omitted). To demonstrate the subjective component — actual knowledge of the substantial risk of serious harm — the plaintiff must show the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [show the defendant actually] dr[e]w the inference." Id. at 1099-1100 (citation omitted); see also Marsh v. Butler Cty., 268 F.3d 1014, 1029 (11th Cir. 2001) (The officer's subjective awareness was shown through "faultfinding, inspection reports by state agencies, reports outlining the conditions that existed at the [j]ail; . . . many complaints from prisoners and requests for assistance; . . . correspondence from prisoners' lawyers detailing the staffing problems and warning of a 'serious threat to the safety of inmates'; and . . . a lawsuit filed . . . on behalf of the inmates." The complaint also alleged the conditions were "longstanding and pervasive."), *abrogated on other grounds by* Twombly, 550 U.S. 561-63. Indeed, "[n]o liability arises under the Constitution for 'an official's failure to alleviate a significant risk that he should have perceived but did not.'" Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008) (quoting

_Farmer_, 511 U.S. at 838). Nevertheless, "[w]hether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" _Goebert v. Lee Cty._, 510 F.3d 1312, 1327 (11th Cir. 2007) (quoting _Farmer_, 511 U.S. at 842).

To demonstrate the objective component of the second element — disregard of the known risk — a plaintiff must show that the defendant "knew of ways to reduce the harm but knowingly . . . or . . . recklessly declined to act." _Rodriguez v. Sec'y for Dep't of Corr._, 508 F.3d 611, 620 (11th Cir. 2007) (citations omitted); _see also Marsh_, 268 F.3d at 1029 (after finding officer was subjectively aware of risk based on conditions at jail, court found doing "nothing to alleviate the conditions . . . , despite repeated warnings and recommendations for how conditions could be improved," was objectively unreasonable). Like the subjective component, "[d]isregard of the risk is also a question of fact that can be shown by standard methods." _Goebert_, 510 F.3d at 1327 (citation omitted).

1. PREA Standards

Plaintiff alleges "all the wardens" were aware of his transgender status, "refused to provide him protection in

15

accordance with PREA[,] and were deliberately indifferent to his vulnerability as a transsexual exhibiting female physical traits." (Pl.'s Resp. Opp'n Moving Defs.' Mot. to Dismiss, at 3.)  In sum, Plaintiff's claim here is that he is a transgender female and, therefore, faced a substantial risk of sexual abuse and should automatically have been more protected upon request. (Id. at 4–6.)  Plaintiff cites the PREA screening and placement standards and "[t]he Georgia Department of Corrections [("GDOC")] Standard Operating Procedure for PREA," which "adopts a zero tolerance for sexual abuse of inmates at risk of sexual attack." (Id. at 5.) The Court quickly dispels Plaintiff's broad claim that "States['] failure to follow the requirements of PREA demonstrates deliberate indifference as PREA provides in § 2(13)." (Id. at 4–5.)  The PREA does not include such a general statement.  The findings section of PREA provides: "States that do not take basic steps to abate prison rape by adopting standards that do not generate significant additional expenditures demonstrate [deliberate] indifference." 34 U.S.C. § 30301(13).  There are insufficient facts in the Amended Complaint concerning the standards adopted or implemented by each prison housing Plaintiff.  Thus, Plaintiff's Amended Complaint cannot survive based on citing to such a broad statement within PREA.

Plaintiff further cites to no case where a court found failure to follow a PREA requirement was a per se Eighth Amendment

violation. It is true that "PREA cites Farmer v. Brennan as an example of deliberate indifference to the substantial risk of sexual attack by other prisoners as violative of the Eighth Amendment" (Pl.'s Resp. Opp'n Moving Defs.' Mot. to Dismiss, at 4), but it does not follow that noncompliance with PREA requirements is a per se Eighth Amendment violation.[11] Plaintiff's deliberate indifference claim must be proven by the standard methods, and the mere fact that Plaintiff is transgender is insufficient to show Moving Defendants are liable under the Eighth Amendment for any assault Plaintiff experienced. Compare Green, 2020 WL 57329, at *10 (finding no deliberate indifference when transgender female was sexually assaulted after being placed in general population subsequent to a PREA screening that took into account the plaintiff's "sexual orientation, gender orientation, and [the plaintiff's] own perception of her vulnerability"), and Jacoby v. Carter, No. 4:16-CV-0728-MHH-TMP, 2017 WL 2962776, at *20 (N.D. Ala. May 1, 2017) ("[T]he plaintiff may not rely solely on his claims that he is a feminine, gay, smaller size white male to establish deliberate indifference. . . . Rather, . . . the plaintiff must demonstrate specific facts to show that each of the named defendants knew that the plaintiff was at risk of serious

---

[11] Further, housing a transgender inmate in general population is not automatically prohibited by PREA. See Green v. Hooks, ___ F. App'x ___, 2020 WL 57329, at *2 (11th Cir. Jan. 6, 2020) ("Inmates of differing security levels are routinely housed together, and this practice is not prohibited by PREA.").

harm and took no actions to alleviate that risk.") (internal quotation marks and citation omitted), *R. & R. adopted by* 2017 WL 2957822 (July 11, 2017), with Diamond v. Owens, 131 F. Supp. 3d 1346, 1376-78 (M.D. Ga. 2015) (finding the complaint plausibly showed the officers' deliberate indifference based not just on the plaintiff's transgender status or PREA standards, but also the officers' knowledge of repeated sexual assaults and being told by a doctor that the plaintiff was highly vulnerable to sexual assaults at the prison "given its population of violent offenders").

### 2. Demonstrating Subjective Awareness

The Court now turns to the remaining allegations in the Amended Complaint to see whether Plaintiff has demonstrated Moving Defendants' deliberate indifference. The Supreme Court outlined what an officer's deliberate indifference to a serious risk may look like:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk."

>       * * *

> [A]nd it does not matter whether the risk comes from a single source or multiple sources, any more than it

matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.

Farmer, 511 U.S. at 842-43. But an officer can show that he "did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger." Id. at 844.

Plaintiff complains that he faced an excessive risk of attack because of his transgender status. Plaintiff cites one case, Diamond, which he argues "presented a similar situation in which the Plaintiff was transgender and was denied medical treatment as well as alleged multiple failure to protect claims." (Pl.'s Resp. Opp'n Moving Defs.' Mot. to Dismiss, at 6.) Plaintiff block quotes a section of the case without a factual comparison, but the Court undertakes this task. In Diamond, the Court found the complaint plausibly showed the officers' subjective awareness of the plaintiff's risk because the complaint:

> [A]lleged that a transgender inmate's vulnerability to assault at a closed-security male facility was obvious to [the defendants] and that PREA and GDOC policies made clear transgender inmates are highly vulnerable to sexual assault. Further, she alleges [the defendants] spoke with her directly about her transgender status and were aware from notifications and records she was repeatedly sexually assaulted at three different closed-security facilities. [The plaintiff] met with [one defendant] at least three times about her sexual assaults, and [a doctor] contacted [that officer] directly about [the plaintiff's] vulnerability to assault at Valdosta State Prison given its population of violent offenders.

131 F. Supp. 3d at 1378 (footnote omitted). In so finding, the court in Diamond cited a recognized means to show subjective knowledge: "[T]he pervasive and widespread nature of the conditions suggest the defendant had been exposed to information concerning the risk and thus must have known about it." Id. (quoting Bugge v. Roberts, 430 F. App'x 753, 761 (11th Cir. 2011) (quoting Farmer, 511 U.S. at 842-43)). Defendants argue the present case is factually distinct from Diamond because "the [Amended Complaint] lacks plausible allegations of a long-standing, pervasive, or well-documented risk of serious harm to Plaintiff." (Moving Defs.' Reply Supp. Mot. to Dismiss, at 5-6.) The Court analyzes the plausibility of Plaintiff's Amended Complaint as against the Moving Defendants at each prison.

a. *Autry State Prison*

The first attack was a sexual assault at Autry State Prison. There is no claim of any repeated or pervasive sexual assaults before this attack that would show Defendant Nobles's subjective awareness as in Diamond. It is unclear what Defendant Nobles did after the attack because in one paragraph, Plaintiff alleges, "No action was made to remove Plaintiff . . . or [the attacker] from the cell or dorm with one another." (Am. Compl., ¶ 13.) In the following paragraph, he alleges that following the assault, he was sent to the hospital, and upon his return, was placed in lockdown and no longer in the cell with his attacker. Regardless of the

20

actions taken after the sexual assault, Plaintiff fails to allege facts sufficient to establish Defendant Nobles's subjective awareness that Plaintiff faced a substantial risk of serious harm prior to the attack. Knowing only that Plaintiff "filed a [PREA] complaint" is not enough to show Defendant Nobles's failure to move Plaintiff before an attack constituted deliberate indifference. As such, Plaintiff's Eighth Amendment claim against Defendant Nobles fails.

      b.  *Central State Prison*

Plaintiff brings his Eighth Amendment claim stemming from his time at Central State Prison against Defendant Warden Perry. Plaintiff requested PREA protection upon being transferred to Central State Prison. Plaintiff claims he was "not being protected in accordance with PREA" but makes no allegation that Defendant Perry was aware of the prior sexual assault. On August 9, 2017,[12] while watching television he was "hit so hard that he fell to the ground. His attacker proceeded to kick him in the abdomen and punch him continuously."[13] Here, the only allegation Plaintiff

---

[12] The Amended Complaint states 2018, but given the timeline, the Court believes Plaintiff means 2017.

[13] Plaintiff also states, "No officer broke up the fight," but there is no allegation that these officers are defendants in the current suit. Further, Plaintiff states, "The prison was short staffed and there was one officer watching four pods." This statement is insufficient on its own to show a general excessive risk posed to inmates based on jail conditions. See, e.g., Purcell ex rel. Estate of Morgan, 400 F.3d at 1320-21 ("We accept that an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, but confinement in a prison

offers to show Defendant Perry's subjective awareness of risk is that Plaintiff "requested PREA protection." As discussed above, requesting PREA protection alone is insufficient to place a warden on notice that an inmate faces a substantial risk of serious harm. The Court finds the Amended Complaint fails to plausibly show Defendant Perry was subjectively aware Plaintiff faced a serious risk. As such, Plaintiff fails to state an Eighth Amendment claim against Defendant Perry.

c. *Augusta State Medical Prison*

Plaintiff brings his Eighth Amendment claim stemming from his time at Augusta State Medical Prison against Defendants Warden Philbin and Unit Manager Harris. Once again, Plaintiff requested PREA protection from Defendant Philbin following transfer and "filed grievances about not being protected in accordance with PREA." After being in the prison for over four months, an altercation occurred between Plaintiff and his cell mate Terry Frasier: "Frasier saw [Plaintiff] come in the shower where Frasier was masturbating in which Frasier though[t] Plaintiff Cox was watching. Frasier then threatened to 'wet' Plaintiff Cox. That same day Frasier pulled out a shank on Plaintiff Cox to which [Plaintiff] fought back with a lock in a sock."

---

where violence and terror reign is actionable.") (citation and internal quotation marks omitted).

It appears no officer was aware of the fight until after it concluded, and Plaintiff makes no claim about any injuries from the fight. No defendant became aware of the fight until Plaintiff filed a PREA regarding the fight with "Counselor Taylor who reported it to [Defendant] Harris." Plaintiff does not allege any incidents occurred after the fight while remaining in the cell with Frasier. Around thirty days after the fight, Plaintiff asked Defendant Harris why Plaintiff and Frasier were still in the same cell and Defendant Harris granted Plaintiff's request by removing Plaintiff from the cell with Frasier; the two remained in the same dorm. A few days after being moved, on May 21, 2018, Plaintiff "was critically stabbed by Terry Frasier and hospitalized for six days for his injuries. Upon being released from the hospital[,] Plaintiff was placed on lockdown in a PREA dorm."

For Plaintiff's claim here to prevail, it must be plausible that Defendants Philbin and Harris were aware that Plaintiff faced a substantial risk of serious harm. There is no allegation that Defendants Philbin or Harris was aware of either attack in the previous prisons. There is also no allegation that Defendant Philbin was aware of the fight between Plaintiff and Frasier that resulted from the bathroom encounter. Plaintiff only states, "Officials at Augusta State Medical Prison became aware of a fight that occurred between Plaintiff Cox and Terry Frasier." (Am. Compl., ¶ 17.) For purposes of this motion, however, the Court

23

assumes Defendant Philbin is one such "official" who was aware of the fight. The Amended Complaint makes clear that Defendant Harris was aware of the fight. As such, Plaintiff claims Defendants Philbin and Harris failed to protect him from the May 21, 2018 attack when their knowledge of relevant events was limited to the following: Defendant Philbin knew that Plaintiff requested PREA protection from him upon entry into the prison; Defendant Harris knew that Plaintiff filed a PREA regarding the fight with Frasier; and, for purposes of this motion, both knew of the fight between Plaintiff and Frasier. These facts do not place Defendants Philbin or Harris on notice that Plaintiff faced a substantial risk of serious harm, especially after Plaintiff was removed from the same cell as Frasier, as Plaintiff requested.[14] Consequently, Plaintiff's Amended Complaint fails to allege facts making it plausible that Defendants Philbin and Harris were deliberately indifferent to a substantial risk of serious harm.[15]

---

[14] Moving Defendants also state this action "was a reasonable response by [Defendant] Harris given the only alleged prior interaction between Fra[s]ier and Plaintiff was a shower fight." (Br. Supp. Moving Defs.' Mot. to Dismiss, at 10.) Plaintiff fails to dispute this point. The Court notes that an officer is not deliberately indifferent if he responds in a reasonable way. See Caldwell, 748 F.3d at 1099. Because Plaintiff's Amended Complaint fails to show Defendant Harris's subjective awareness to a serious risk, however, the Court need not determine whether Defendant Harris responded reasonably.

[15] Plaintiff fails to raise any factual allegations against Defendant Sergeant Davis. As such, there are insufficient facts in the Amended Complaint to show Defendant Davis violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

## IV. CONCLUSION

For the foregoing reasons, Moving Defendants' motion to dismiss amended complaint (Doc. 17) is **GRANTED**. Further, this action as against Officer Crump is **DISMISSED WITHOUT PREJUDICE**. As no claims remain, Plaintiff's case is **DISMISSED**. The Clerk is directed to **TERMINATE** all motions and deadlines and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 31ST day of March, 2020.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA